## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Lewis T. Babcock, Chief Judge

Civil Action No. 06-cv-00436-LTB-GJR

BYRNE CHAUNCEY SMITH,

      Plaintiff,

v.

SHERIFF"S DEPUTY SHELLY WILLIAMS, in her individual capacity and in her official
capacity as an employee of the Hinsdale County Sheriff's Office, Hinsdale County, Colorado;
SHERIFF"S DEPUTY LOUIS ALLEN JOHNSON, in his individual capacity and in his official
capacity as an employee of the Hinsdale County Sheriff's Office, Hinsdale County, Colorado;
HINSDALE COUNTY, COLORADO;
WILLIAM DENISON, in his individual capacity and in his official capacity as the Hinsdale
County Sheriff, Hinsdale County, Colorado;
GREG WILLIAMS, in his individual capacity and in his official capacity as the Hinsdale County
Undersheriff, Hinsdale County, Colorado;
THE HINSDALE COUNTY SHERIFF"S DEPARTMENT, Hinsdale County, Colorado; and
THE BOARD OF COUNTY COMMISSIONERS OF HINSDALE COUNTY, COLORADO,
namely:
Flynn Mangum, Linda Matthews, Allen Brown and Carol Drake (County Commissioner at the
time of the incident), in their official capacities as commissioners.

      Defendants.

_____

## Order
_____

      This case arises from the actions of defendants Greg Williams, Shelly Williams and Louis

Johnson (collectively "the deputies") in arresting Byrne Smith ("Smith") on the evening of March

18  2005. The defendants move for summary judgment on Smith's claims that the deputies

arrested him using excessive force, violating Smith's constitutional rights (actionable under 42

U.S.C. § 1983), and violating numerous state tort laws. For the reasons discussed below, the

defendants' motion is GRANTED, in part and DENIED, in part.

# I. BACKGROUND

On the night of March 18, 2005 three deputies from the Hinsdale County Sheriff's office arrested  Byrne Smith at his home in Lake City, Colorado. The deputies were Undersheriff Greg Williams ("Undersheriff Williams"), Sheriff's Deputy Shelly Williams ("Deputy Williams") and Sheriff's Deputy Louis Johnson ("Deputy Johnson"). Smith was arrested  for failing to report to serve a sentence from a 1998 conviction for numerous misdemeanors, including driving while ability impaired, Colo. Rev. Stat. § 42-4-1301, resisting arrest, Colo. Rev. Stat. § 18-8-103 and prohibited use of a weapon, Colo. Rev. Stat. § 18-12-106.  Smith was ordered to serve a 20-day sentence no later than February 1, 1999. Smith never served this sentence, and the matter appears to have languished until 2005.

It is unclear what prompted the Hinsdale County Sheriff's renewed interest in this case in 2005. Smith alleges that he was well known in Lake City (a town of about 375), that he had spent most of his life there, that he had been living there for most of a year prior to his arrest, and that the Sheriff's office had numerous opportunities to arrest him prior to March 18, 2005. While defendants' brief states that the impetus for Smith's arrest was that the sentencing Judge in the 1999 misdemeanors "saw him on the street and realized that plaintiff had never served his sentence," the record contains no evidence to support this statement.  Also, the record does not contain an actual warrant for Smith's arrest, only a computer print-out of the charges outstanding against Smith, as well as charges for contempt of court and failure to comply. This print-out is dated March 18, 2005, but does not indicate if this is the date a warrant was issued or merely the date this document was printed. Some time prior to night of the arrest, Undersheriff Williams communicated with Smith's son, Shannon Smith, urging him to persuade his father to turn himself

2

in. Shannon Smith states he relayed Undersheriff Williams' request, but Byrne Smith declined to turn himself in.

On the night of March 18, 2005 Deputy Johnson was patrolling the area near Smith's home and noticed the lights were on. He states that he had been warned not to try to apprehend Smith himself, so he contacted Undersheriff Sheriff Williams and Deputy Williams, who arrived shortly. At about 10:30pm, Undersheriff Williams knocked on the door of Smith's home. Several other people were at the home at the time, including Shannon Smith and some friends. Undersheriff Williams states that at the time he arrived to make the arrest he believed, based on "reliable information" from other people in Lake City, that Smith would resist arrest and would be carrying a gun if he was wearing a vest.  Smith answered the door, opening the inside door and holding the outside storm door ajar. Smith was wearing a vest.

At this point, the accounts of the events diverge.  Undersheriff Williams states that he identified himself as a Sheriff, and then grabbed Smith by his vest through the open storm door and pulled him outside. He placed Smith in an arm-bar, and tried to hand-cuff him, but was unable to control him. He noticed what appeared to be a knife in Smith's pocket. Undersheriff Williams states that Smith struggled with him, trying to roll out of the arm bar. Undersheriff Williams claims he repeatedly urged Smith to stop resisting. At some point, Deputy Johnson entered the struggle and tried to control Smith's free hand. When Smith did not stop struggling, and the two deputies could not control him, Undersheriff Williams tried to force Smith down to the ground to subdue him. Because of Smith's struggles, Smith ended up hitting the gravel area where they were standing, face-first.

Smith claims he did not struggle at all. As soon as he was grabbed from his doorway, his

arms were controlled by the deputies. Smith denies that he resisted arrest in any way, but acknowledges that he placed his hands by his belt buckle when he saw the deputies at his door. Moments after he was outside, with both of his arms controlled, Undersheriff Williams swept Smith's feet or tripped him, forcing him to the ground, face-first. Smith states that once he was down, both Undersheriff Williams and Deputy Johnson sat on top of him and cuffed him. He states that Undersheriff Williams said "I can do anything I want with you, you are a felon."

It is undisputed that Smith suffered abrasions and lacerations to his face and arms, and was treated at a nearby hospital. The treating physician stated that while the injuries "look ugly" they were "not that severe."

Based on these events, Smith brings claims against Undersheriff Williams, Deputy Williams, Deputy Johnson (all in their individual and official capacities), Hinsdale County Sheriff William Denison ("Denison") (in his official and individual capacity), Hinsdale County Colorado, the Hinsdale County Sheriff's Department and the County Commissioners of Hinsdale County, in their official capacities. Smith's claims are for assault (claim 1), negligent infliction of emotional distress (claim 2), police brutality (claim 3), violation of plaintiff's constitutional rights under 42 U.S.C. § 1983 (claim 4), abuse of power (claim 5), invasion of privacy (claim 6), abuse of process (claim 7), respondeat superior (claim 8), outrageous conduct (claim 9), negligent failure to train and supervise (claim 10), punitive damages (claim 12), breach of fiduciary duty (claim 13), negligence on the part of the three deputies (claim 14) and battery (claim 15). Smith also seeks attorney fees under 42 U.S.C. § 1988 (claim 11). (While defendants rely on a "pared down" list of plaintiff's claims from the Scheduling Order of August 3, 2006, I rely on the claims as listed in the Complaint.)

## II.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The non-moving party has the burden of showing that there are issues of material fact to be determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial.  *Id.* at 323. However, I should not enter summary judgment if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party.  *Anderson,* 477 U.S. at 252.

## III.  DISCUSSION

Defendants move for summary judgment of all claims against all defendants. They argue first that the deputies are entitled to qualified immunity from Smith's claim for excessive force under 42 U.S. C. § 1983.

A.  Qualified Immunity to Claims under 42 U.S.C. § 1983

"Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset." *DeSpain v. Uphoff,* 264 F.3d 965, 971 (10th Cir. 2001.)  Determining

qualified immunity from § 1983 claims is a two-part inquiry. First, a court must determine "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz,* 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). A court considers this question "in the light most favorable to the party asserting the injury." *Id.* at 201.

The second inquiry, assuming a constitutional violation occurred, is whether the defendant's actions violated "clearly established constitutional rights of which a reasonable person would have known." *Walker v. City of Orem,* 451 F.3d 1139, 1145 (10th Cir. 2004) (quoting *Hope v Pelzer,* 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). The inquiry on this second step "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201. When a defendant raises a qualified immunity defense, the plaintiff bears the burden to satisfy both elements of the qualified immunity defense. *DeSpain,* 264 F.3d at 971. "When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be properly denied." *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1312 (10th Cir. 2002).

Defendants contend that the deputies did not violate Smith's constitutional rights, and that even if they did so the right at issue was not clearly established at the time. I will consider both of these arguments.

1.     Did the Deputies Violate Smith's Constitutional Rights?

I first analyze whether the deputies violated Smith's Fourth Amendment rights by using excessive force in arresting him. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing

6

governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The right of law enforcement officers to make an arrest necessarily includes the right "to use some degree of physical coercion." *Id.* While the test for reasonableness under the Fourth Amendment defies "precise definition or mechanical application," it involves a case-specific fact-sensitive inquiry of such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Moreover, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight," *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-397. The inquiry into reasonableness in an excessive force claim is objective, "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

a. Undersheriff Williams

Smith claims that Undersheriff Williams used excessive force in grabbing Smith from the doorway of his home, and in forcing him face-first to the ground.

I consider first the reasonableness of grabbing Smith from his doorway. The deputies that night confronted a man already convicted for unlawful possession of a weapon and for resisting

arrest. The deputies had tried to arrange Smith's voluntary submission, but Smith refused to turn himself in. The deputies had been warned that Smith might resist, and that Smith might be armed if he was wearing his vest (which he was). Smith states that he had not carried a gun for decades, but this does not address the objective reasonableness of Undersheriff Williams' belief that Smith might carry a gun and might try to resist arrest. Undersheriff Williams reports (and Smith does not dispute) that Smith had two knives in his pockets the night he was arrested. Moreover, Smith concedes that he placed his hands in a defensive posture when he first saw the deputies. This evidence shows that it was objectively reasonable for the deputies to believe that Smith might pose a threat and might try to flee or resist arrest. While Smith's underlying misdemeanor charges were not feloneous, the nature of Smith's crimes and the warnings the deputies received were sufficient to raise reasonable issues regarding officer safety and Smith's readiness to resist or flee. Under the circumstances, seizing him from the doorway was objectively reasonable.

However, Smith states that once Undersheriff Williams had removed him from his home, Smith offered no resistance and both of his arms were immediately controlled by Undersheriff Williams and Deputy Johnson. Applying the *Graham* factors here, the result is different. Smith at this point was no longer a threat to the deputies or to anyone else. There was no risk of flight. Smith claims he was not resisting. While his underlying offenses might give rise to concern over flight and resistance, these concerns were moot once he was under the physical control of the deputies. In this circumstance, it was unnecessary and unreasonable for Undersheriff Williams, who is about 100 pounds heavier and 20 years younger than the 65 year-old Smith, to "violently slam" Smith "face first" into the gravel. The deputies dispute Smith's account and contend that Smith struggled with them to avoid being handcuffed, so taking him to the ground was necessary

to secure him. The deputies further contend that Smith's own expert witness, Kenneth Barnes, states that it is acceptable police procedure to "prone" a suspect who tenses up. But neither of these arguments gives credit to Smith's version of events, as I must in a motion for summary judgment. Smith states that he tensed up <u>before</u> the deputies grabbed him, but did not struggle or resist, even passively, once he was outside with both of his arms controlled.

The defendants in their brief argue emphatically that it is beyond dispute that Smith's face-first contact with the ground was accidental. The defendants' brief reconstructs at length the minutae of the arrest to argue that Undersheriff Williams' efforts to take Smith down should have led to Smith going down on his back or side, and only Deputy Johnson's coincidental grabbing of Smith's arm inadvertently pivoted Smith to land on his face. This theory of the altercation, while plausible, is based on counsel's "application of physics" to his own reconstruction of the event, and is not supported by any parties' specific account. Undersheriff Williams states only that such a theory is "possible," contending instead that Smith caused his own face-first fall by trying to get out of the arm bar.  Smith contends that Undersheriff Williams "violently" slammed him face first into the gravel. Shannon Smith states that his father was "pile-drived" to the ground. I therefore cannot credit defense's "physics" theory of the accident as beyond dispute, and must conclude that the facts underlying Smith's take-down are very much in dispute.

Under these circumstances, I cannot say that slamming Smith face down into the gravel was reasonable as a matter of law. I therefore conclude that Smith has satisfied the first element of the qualified immunity test, showing that Undersheriff Williams violated his  constitutional rights. To be clear, I am not concluding that, as a matter of law, Undersheriff Williams' actions were unreasonable. Rather, the facts in dispute here are material because they go to the heart of

whether Undersheriff Williams used excessive force. "Where, as here, the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Maestas v. Lujan,* 351 F.3d 1001, 1008 (10th Cir. 2003) [*quoting Fisher v. City of Memphis,* 234 F.3d 312, 317 (6th Cir. 2000)]. This is sufficient to satisfy the first part of Smith's burden in defeating a motion for summary judgment based on qualified immunity.

   b. Deputy Johnson

  Smith's excessive force claim against Deputy Johnson is a different matter. Smith states that Deputy Johnson (along with Undersheriff Williams) "grabbed" him on the side from behind, but that Undersheriff Williams, and not Deputy Johnson, forced him to the ground. Smith states that "I'm not sure how much Mr. Johnson was involved in it. He's treated me nicely all the way." Shannon Smith states that he did not see Johnson use his legs to trip or sweep Smith to the ground. The most he could say was that Johnson and Williams "were both on top of" Smith when he went down, and that Deputy Johnson was "forcing" Smith down. Also, once Smith was on the ground, both deputies were on top of him to handcuff him. These allegations against Deputy Johnson, even assumed to be true, are insufficient to raise a fact question as to whether he used excessive force against Smith. Smith has not met the first part of his burden, and I accordingly grant summary judgment on Smith's claim of excessive force against Deputy Johnson.

   c. Deputy Williams

  Smith claims that Deputy Williams violated his constitutional rights by failing to intervene to prevent the other deputies from using excessive force in arresting him. "A law enforcement

official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *Mick v. Brewer,* 76 F.3d 1127, 1136 (10th Cir. 1996). Liability for failure to intervene requires more than a law enforcement officer's mere presence during a constitutional violation; liability requires that the officer "had the opportunity to intervene but failed to do so." *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423, 1433 (10th Cir. 1984).

Here, the sole facts alleged against Deputy Williams are that she "stood by and did nothing" and did not "stop or intervene" during the arrest. However, Deputy Williams' undisputed testimony is that she was stationed at the doorway of Smith's home addressing the people inside during the take-down, and that she could not and did not see the take-down. Additionally, it is undisputed that the take-down occurred moments after Undersheriff Williams grabbed Smith. Since Deputy Williams did not see the take-down, and the take-down lasted only a few seconds, Deputy Williams did not have the opportunity to intervene, and so cannot be liable for failure to do so. This conclusion is reinforced by Smith's own statement about Deputy Williams that "I have no idea what she did." Smith's allegations, assumed to be true, are insufficient to make out a claim for failure to intervene under § 1983.

2.      Was the Law Clearly Established at the Time of the Arrest?

Even assuming that Undersheriff Williams violated Smith's constitutional rights, Smith still must show that this right was clearly established at the time. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope,* 536 U.S. at 739. This does not require that "the very action in question has previously been held unlawful . . . but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Id.*

11

There is no question that the general proposition that police may not use excessive force in effecting an arrest was clearly established in 2005. *See Graham,* 490 U.S. at 394-395. Moreover, *Graham's* fact-sensitive, multi-factored reasonableness test was also clearly established in 2005. *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1314 (10th Cir. 2002). Defendants argue that in 2005 there was no clearly established law barring the take-down of a struggling defendant, where the deputies could not gain control of his arms and where his injuries were unintended and incidental to the take-down. But this argument presumes the defendants' reconstruction of the event based on their disputed version and "application of physics." It is not the account giving full credit to Smith's version of events, and so cannot be the basis of my disposition of a motion for summary judgment.

Assuming Smith's account to be true, as I must, I conclude that no reasonable officer in the position of Undersheriff Williams could believe that violently downing a cooperative, restrained suspect face-first into the gravel could be legal. Smith has satisfied the second element of defeating Undersheriff Williams' defense of qualified immunity.

I deny Undersheriff Williams' qualified immunity defense for an additional reason as well. The issue of whether the law was clearly established in 2005 hinges on factual disputes over what precisely transpired on March 18, 2005. The Tenth Circuit has held that "summary judgment motions may not be granted on any excessive force claims under § 1983 for which any genuine issue of material fact remains – regardless of whether the potential grant would arise from qualified immunity or from a showing that the officer merely had not committed a constitutional violation." *Olsen,* 312 F.3d at 1314. (Emphasis in original.) Accordingly, since the disputed facts here go both to the existence of a constitutional violation and to whether the law was clearly

12

established, I cannot  grant summary judgment to Undersheriff Williams based on qualified immunity.

B.    Dismissal of State Law Tort Claims

Defendants argue that all state law tort claims should be dismissed against Undersheriff Williams, on various grounds. Defendants contend first that Undersheriff Williams has qualified immunity from Smith's state law tort claims under the Colorado Government Immunity Act ("CGIA"), Colo. Rev. Stat. § 24-10-118. The CGIA bars tort liability for government officials unless their conduct is willful and wanton. *Id.*  Willful and wanton conduct is "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Moody v. Ungerer,* 885 P.2d 200, 205 (Colo. 1994).

Defendants aver that the record contains no evidence suggesting that Undersheriff Williams acted willfully or wantonly. However, as discussed above, Smith has alleged that Undersheriff Williams intentionally slammed him face-first into the gravel when he was not resisting arrest or attempting to flee. Also, once Smith was on the ground and hand-cuffed, he alleges that Undersheriff Williams said to him "I can do anything I want with you, you are a felon." Smith's version of the arrest, although disputed by Undersheriff Williams, creates a genuine issue of material fact as to whether Undersheriff Williams' conduct was willful or wanton. Accordingly, Undersheriff Williams' CGIA defense cannot support summary judgment in his favor.

Defendants also argue that Smith's claim for outrageous conduct should be dismissed because as a matter of law, Undersheriff Williams' action is not "so outrageous in character, and

13

so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coors Brewing Co. v. Floyd,* 978 P.2d 663, 666 (Colo. 1999) [*citing* Restatement (Second) of Torts § 46 (1965)]. However, "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Restatement (Second) of Torts §46(h) (1965). Under the facts alleged here, I cannot say that no reasonable person could find that Undersheriff Williams' actions rise to the level of outrageous conduct.

C.    Claims Against Other Defendants

      1.    Claims Against Individual Defendants

Defendants contend that CGIA immunity bars the tort claims against the other deputies, because Smith has alleged no specific facts to support claims of willful and wanton conduct against Deputy Johnson or Deputy Williams. I agree. The allegations against these defendants, described above, do not support willful and wanton conduct, and so cannot defeat their immunity from state tort claims under the CGIA. The claims against Deputy Johnson and Deputy Williams are dismissed.

Defendants also seek summary judgment on claims against Sheriff Denison. Smith claims that Denison (along with the entity defendants, see below) negligently failed to train and supervise the deputies. To make out a § 1983 claim for inadequate training, a plaintiff must show "(1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward

14

persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training." *Allen v. Muskogee, Okla.,* 119 F.3d 837, 841 (10th Cir.1997). Smith offers no evidence showing that the facts of this case are a "a usual or recurring situation," that Denison exhibited "deliberate indifference," or that Undersheriff Williams' actions are in any way related to inadequate training. Smith states that he has no opinion about how Denison runs the Sheriff's office, and Barnes (Smith's expert witness) offered no analysis of or opinion on the Sheriff's training program or its relation to the events of this case. Smith has failed to meet his summary judgment burden on his claim for lack of training against Denison, and claims against him must be dismissed.

While Smith does not make any other separate claim against Denison, Smith does claim that Denison is vicariously liable for the potential tortious acts of the deputies. (Smith states respondeat superior as a separate claim, but in fact it is a theory of liability whereby an employer may be liable for the conduct of an employee.)  In Colorado a Sheriff may be liable for the tortious acts of his deputies. *Tunget v. Board of County Com'rs of Delta County,* 992 P.2d 650, 652 (Colo. Ct. App.1999), *Peterson v. Arapahoe County Sheriff,* 72 P.3d 440, 444 (Colo. Ct. App. 2003).  The defendants did not address this issue in their motion, but I note that since I have denied summary judgment on the claims against Undersheriff Williams, Denison remains potentially liable on these claims as well.

2.      Claims Against Entity Defendants

Defendants contend that all claims against Hinsdale County, the Hinsdale County Sheriff's Department and the Board of County Commissioners of Hinsdale County must be dismissed because sovereign immunity under the CGIA bars tort claims against public entities unless the claim falls into a specific statutory exception. Colo. Rev. Stat. §§ 24-10-106 & 108. It is unclear if Smith's claims against the County Commissioners are intended against the County Commission as an entity or against the Commissioners individually. But this does not matter, since claims against local officials in their official capacity are simply another way of "pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S.159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).  I therefore construe these claims as against the Hinsdale County Commission as an entity.  None of the allegations in the complaint fall into any of the enumerated statutory waivers of sovereign immunity, and so these claims are barred.

Additionally, individual county commissioners, and the Board of County Commissioners, cannot be liable for the actions of Sheriff's department employees as a matter of law because only the Sheriff has control of Sheriff's employees. *Bristol v. Board of County Commissioners,* 312 F.3d 1213, 1219 (10th Cir. 2002).  The claims against the entity defendants are accordingly dismissed.

It is so Ordered that defendants' motion for summary judgment (Docket # 33) is DENIED, in part, and GRANTED, in part, as follows:

1) Defendants' motion for summary judgment as to Smith's claims against Greg Williams for excessive force under 42 U.S.C. § 1983 is DENIED;

16

2) Defendants' motion to dismiss all state law tort claims against Greg Williams as barred by the CGIA is DENIED;

3) Defendants' motion to dismiss the claim against Greg Williams for outrageous conduct is DENIED;,

4) Defendants' motion for summary judgment on the claim against William Denison for failure to train and supervise is GRANTED;

5) Defendants' motion for summary judgment as to all claims against Shelly Williams, Louis Johnson, Hinsdale County, the Board of Commissioners of Hinsdale County, and the Hinsdale County Sheriff's Department is GRANTED;

6) The claims remaining in this case are: claim 1 (assault), claim 2 (negligent infliction of emotional distress), claim 3 (police brutality), claim 4 (violation of constitutional rights), claim 5 (abuse of power), claim 6 (invasion of privacy), claim 7 (abuse of process), claim 9 (outrageous conduct), claim 11 (attorney fees), claim 12 (punitive damages), claim 13 (breach of fiduciary duty) and claim 15 (negligence), against defendants Greg Williams and William Denison; and additionally claim 8 (respondeat superior) against defendant William Denison.

**DONE and ORDERED,** this ___19th___ day of January, 2007 at Denver, Colorado.

___s/Lewis T. Babcock_____
United States District Chief Judge